REVISED MAY 16, 2002

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

—————————————

No. 01-10487

—————————————

LASALLE BANK NATIONAL ASSOCIATION,
As Trustee in trust for Holders of the Prudential
Securities Secured Financing Corporation -
Commercial Pass Through Certificates Series 1995-C1,

Plaintiff - Counter Defendant - Appellee,

v.

JOHN A. SLEUTEL,

Defendant - Counter Claimant - Appellant.

————————————————————————————————————————————————————

Appeal from the United States District Court for the
Northern District of Texas, Lubbock Division

————————————————————————————————————————————————————
May 13, 2002

Before JOLLY, JONES and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The defendant, John A. Sleutel, appeals the district court's entry of a deficiency judgment

against him. This judgment arose from the default on a promissory note, on which Sleutel was the

guarantor. The district court also granted plaintiff LaSalle Bank National Association's motion for

summary judgment on Sleutel's offset defense and his counterclaim. We AFFIRM.

I

On March 30, 1995, Midland Loan Services, L.P., loaned Frontier Properties, L.L.C., $1.575

million for the purchase of a senior assisted-living facility (the "Facility") in Lubbock, Texas. John

Sleutel, in his capacity as an authorized representative of Frontier, executed a promissory note (the "Note") and mortgage which granted Midland a security interest in the Facility. Sleutel, with the assistance of counsel, negotiated and executed an absolute personal guaranty agreement (the "Guaranty") to obtain the loan. Midland assigned the Note and Guaranty to KC Funding Corporation, and KC Funding later assigned the Note and Guaranty to the trust for which LaSalle acts as Trustee.

In August 1999, Frontier defaulted. LaSalle demanded payment under the Note and Guaranty. In October 1999, LaSalle accelerated the debt according to the terms of the Note, and again demanded payment. In November 1999, LaSalle filed this lawsuit against Sleutel for breach of the Guaranty and sought recovery of all amounts due under the Note. On February 1, 2000, LaSalle foreclosed on the Facility. In a non-judicial foreclosure sale, LaSalle, the only bidder, successfully purchased the Facility for $750,000. According to Sleutel, the Facility was appraised at $1.6 million at the time of the foreclosure sale.

In response to the suit on the Guaranty, Sleutel raised the right of offset under Texas Property Code § 51.003 as an affirmative defense, alleging that the foreclosure price was below the fair market value of the Facility and that he was entitled to an offset in the amount of the deficiency. Sleutel also alleged a counterclaim for conversion predicated on § 51.003's right of offset. LaSalle moved for summary judgment on the ground that Sleutel waived the right of offset in the Guaranty Agreement.

The district court granted partial summary judgment and dismissed Sleutel's affirmative defense and counterclaim. On March 5, 2001, the district court conducted a bench trial and rendered a judgment for LaSalle in the amount of $1,072,471.68. This judgment included "prepayment

2

consideration" of $254,380.50. Sleutel timely appealed the district court's summary judgment and final judgment.

II

We first consider whether Sleutel can waive any right of offset that he has under Texas law. The district court granted summary judgment to LaSalle on this issue, finding that Sleutel had validly waived any right of offset that Texas law provides. We review the district court's grant of summary judgment de novo. Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 758 (5th Cir. 1996).

The question presented involves the interpretation of a Texas statute. We apply the statutory analysis that a Texas court would apply. McNeil v. Time Ins. Co., 205 F.3d 179, 183 (5th Cir. 2000). "In Texas, the cardinal rule of statutory construction is to ascertain the 'legislature's intent,' and to give effect to that intent. The duty of the court is to construe a statute as written and ascertain the legislature's intent from the language of the act." Id. (citing Union Bankers Ins. Co. v. Shelton, 889 S.W.2d 278, 280 (Tex.1994); Morrison v. Chan, 699 S.W.2d 205, 208 (Tex.1985)).

In 1991, the Texas Legislature adopted Tex. Prop. Code § 51.003 ("Section 51.003"), the "Deficiency Judgment" statute. Section 51.003 sets forth the requirements for obtaining a deficiency judgment following a non-judicial foreclosure sale. Unlike the "Anti-Deficiency" statutes of other jurisdictions, Texas's deficiency judgment statute does not prohibit a lender from obtaining a deficiency judgment. Instead, the statute provides a right of offset as follows:

51.003. Deficiency Judgment

(a) If the price at which real property is sold at a foreclosure sale under Section 51.002 [non-judicial foreclosure] is less than the balance of the indebtedness secured by the real property, resulting in a deficiency, any action brought to recover the deficiency must be brought within two years of the foreclosure sale and is governed by this section.

3

(b) Any person against whom such recovery is sought by motion may request that the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale. . . .

(c) If the court determines that the fair market value of the real property is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any claim, indebtedness, or obligation of any kind that is secured by a lien or encumbrance on the real property that was not extinguished by the foreclosure, exceeds the sale price. . . .

Tex. Prop. Code § 51.003.[1]

Although the statute provides a right of offset, here there is no dispute that the Guaranty agreement contains an express waiver of the rights of offset to the extent allowed by law. The Guaranty agreement provides:

To the extent allowed by applicable law, Guarantor expressly waives and relinquishes all rights and remedies now or hereafter accorded by applicable law to guarantors or sureties, including, without limitation: . . . (III) any defense, right of offset or other claim which Guarantor may have against Borrower or which Borrower may have against Lender or the Holder of the Note; . . . and (VI) all rights of redemption, homestead, dower, and other rights or exemptions of every kind, whether under common law or by statute.

Despite this language, Sleutel contends that the waiver of rights is ineffective because the "applicable [Texas] law" does not allow waiver of the rights provided by § 51.003. Thus, Sleutel presents to us the question whether a guarantor may contractually waive any right of offset provided by § 51.003.

There are few Texas cases interpreting § 51.003, and no cases regarding waiver of § 51.003's right of offset. Sleutel's argument rests on public policy. Sleutel contends that the Texas Legislature

---

[1]LaSalle questions whether § 51.003 even applies to guarantors. One Texas Court of Appeals has held that it does. See Long v. NCNB-Texas Nat'l Bank, 882 S.W.2d 861, 865 (Tex. App. (Corpus Christi) 1994, no writ). The language of § 51.003 applies to "[a]ny person." However, because we find that Sleutel can waive any rights that he might have and that he has done so in this case, we need not reach this issue specifically.

intended to protect the public from abusive lending practices by enacting § 51.003. Allowing contractual waiver of rights provided by § 51.003 would frustrate the public policy goals of the statute, according to Sleutel. Sleutel points to cases from Texas and other jurisdictions to support the blanket proposition that the law protects individual debtors against abuses by creditors.[2] None of the cited cases, however, discuss the public policy concerns involved in transactions between lenders and guarantors.

---

[2]See, e.g., Lester v. First American Bank, 866 S.W.2d 361, 367 (Tex. App. (Waco) 1993, writ denied) (Contract clause in Texas constitution does not prevent the legislature from "[safeguarding] mortgagors from sales which will or may result in mortgagees collecting more than their due." (citation omitted)); Palm v. Schilling, 199 Cal.App.3d 63, 65-66 (Cal. Ct. App. 1988) (California Code of Civil Procedure § 580(b), which provided that "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract for sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property . . .," could not be contractually waived as a condition of the encumbrance of real property with a purchase money mortgage or deed of trust or the renegotiation of an obligation, so long as it continued to be secured with the original real estate.); but see Brunsoman v. Scarlett, 465 N.W.2d 162, 163, 167 (N.D. 1991) (mortgagor or vendee cannot waive protections of the anti-deficiency judgment statute before default, but can do so after default); Chemical Bank v. Belk, 255 S.E.2d 421, 427-28 (N.C. Ct. App. 1979) (Purchasers of realty who secured part of the purchase price with a deed of trust on the realty could not waive benefits of North Carolina anti-deficiency statute, N.C. Stat. § 45-21.38, which provides that: "In all sales of real property by mortgagees and/or trustees under powers of sale contained in any mortgage or deed of trust executed after February 6, 1933, or where judgment or decree is given for the foreclosure of any mortgage executed after February 6, 1933, to secure to the seller the payment of the balance of the purchase price of real property, the mortgagee or trustee or holder of the notes secured by such mortgage or deed of trust shall not be entitled to a deficiency judgment on account of such mortgage, deed of trust or obligation secured by the same."); Heckes v. Sapp, 229 Cal.App.2d 549, 552 (Cal. Dist. Ct. App. 1964) ("[A] guarantor is not shielded from a deficiency judgment by section 580b."); Stretch v. Murphy, 112 P.2d 1018, 1021 (Or. 1941) (mortgagor could not waive provisions of Oregon anti-deficiency statute, which provided that when a mortgagee foreclosed on a property with a purchase money mortgage, the mortgagee was not entitled to a deficiency judgment). However, the Oregon Supreme Court has since held that the anti-deficiency judgment statute does not serve to protect guarantors. See Sumner v. Enercon Development Co., 307 Or. 579, 581 (1989).

Although § 51.003 does not address waiver, other provisions of the Texas Property Code do address waiver and specifically prevent waiver of those provisions, in all or in some situations.[3] Under the principle of *inclusio unius est exclusio alterius*, we consider this as evidence that the Texas Legislature knows how to preclude waiver of statutory provisions when it so desires, and the fact that it did not do so in this case indicates that it intended to allow this provision to be waived. See, e.g., Collins v. County of El Paso, 954 S.W.2d 137, 147 (Tex. App. (El Paso) 1997) (citing Cameron v. Terrell & Garrett, 618 S.W.2d 535, 540 (Tex.1981); Laidlaw Waste Systems (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 659 (Tex.1995)) ("Texas courts have adopted the principle of statutory interpretation expressed as inclusio unius est exclusio alterius, meaning that we are to assume that the purposeful inclusion of certain terms implies the purposeful exclusion of terms that are absent.").

---

[3]See, e.g., Tex. Prop. Code § 28.006(a) ("[A]n attempted waiver of a provision of [Chapter 28, Prompt Payment to Contractors and Subcontractors,] is void."); Tex. Prop. Code § 54.043(b) ("A provision of a lease that purports to waive or diminish a right, liability, or exemption of [Chapter 54, Subchapter C, Landlord's Liens: Residential Landlord's Liens] is void to the extent limited by this subchapter."); Tex. Prop. Code § 59.004 ("Except as expressly provided by [Chapter 59, Self-Service Storage Facility Liens], a lessor or tenant may not vary the provisions of this chapter by agreement or waive rights conferred by this chapter."); Tex. Prop. Code § 62.022 ("Except as provided by Subsection (b), the waiver of a broker's right to a lien under [Chapter 62, Broker's and Appraiser's Lien on Commercial Real Estate], or a release given for the purpose of releasing the broker's lien before the commission is satisfied or forgiven, is void."); Tex. Prop. Code § 82.004 ("Except as expressly provided by this chapter [Chapter 82, Uniform Condominium Act], provisions of this chapter may not be varied by agreement, and rights conferred by this chapter may not be waived."); Tex. Prop. Code § 91.006(b) ("A provision of a lease that purports to waive a right or to exempt a landlord from a liability or duty under this section [Landlord's Duty to Mitigate Damages] is void."); Tex. Prop. Code § 221.041(c) ("A purchaser may not waive his right of cancellation under this section [Texas Timeshare Act/Purchaser's Right to Cancel]. A contract containing a waiver is voidable by the purchaser.").

The issue in this appeal is specifically limited to waiver of any offset rights by a guarantor.[4] We note, however, that a number of other jurisdictions have found that a guarantor may waive offset rights that are provided by statute.[5]

Further, the cases Sleutel cites which hold that anti-deficiency judgment statutes may not be waived (or may not be waived in certain circumstances) differ from the present case. Those cases involved statutes which prevented the mortgagee, trustee, etc. from obtaining a deficiency judgment after the sale of the property in any circumstance.[6] Here, § 51.003 is not a true anti-deficiency statute, as it does allow for deficiency judgments; instead, it provides for offsets against the judgments. Moreover, the statute does not prohibit waiver of its provisions.

We hold therefore that Sleutel, as a guarantor, could waive any right of offset he may have under § 51.003--and, of course, he did.

### III

The final question we address is whether LaSalle is entitled to prepayment consideration under the terms of the Note. Sleutel contends that the district court improperly awarded LaSalle prepayment consideration. Sleutel argues that prepayment consideration is not due until the lender receives full tender of the outstanding debt. This argument is based on the language of paragraph 5(e) of the Note:

---

[4]We do not decide if a waiver by any other party would be acceptable.

[5]See, e.g., Founders Bank and Trust Co. v. Upsher, 830 P.2d 1355, 1363-64 (Okla. 1992) (guarantors may waive any right of offset provided by statute); Valley Bank v. Larson, 663 P.2d 653, 655 (Idaho 1983) ("A guarantor may legally contract to waive a defense provided by anti-deficiency judgment statute[s].").

[6]See footnote 2.

> Prepayment After Event of Default. If following the occurrence of any Event of Default, Borrower shall tender payment of an amount sufficient to satisfy the Debt at any time prior to the sale of the "Mortgaged Property" (as defined in the Mortgage), either through foreclosure or the exercise of the other remedies available to Lender under the Mortgage or the Other Security Documents, such tender by Borrower shall be deemed to be a voluntary prepayment under this Note in the amount tendered and Borrower shall, in addition to the entire debt, to the extent permitted by applicable law, also pay to Lender the applicable Prepayment Consideration as set forth in this Note . . . .

The outstanding debt at the time of the foreclosure sale was $1,723,283.20. Because LaSalle received, at most, $1.7 million from the foreclosure sale (the highest possible fair market value of the property), Sleutel contends that "full tender" of the debt was not made, and the prepayment consideration is not due.

We need not decide if the sale of the property via foreclosure was full tender of a "voluntary prepayment." Under the terms of the Note, prepayment consideration may be accelerated along with the debt after an event of default. Paragraph 7 of the Note provides:

> Acceleration. The whole of the Debt, including without limitation, the principal sum of this Note, all accrued interest and all other sums due under this Note, the Mortgage and the Other Security Documents, together with any applicable Prepayment Consideration, shall become immediately due and payable at the option of the Lender, without notice, at any time following the occurrence of an Event of Default.

According to LaSalle, the reference to "applicable Prepayment Consideration" is necessary because prepayment consideration did not apply in years nine through maturity of the Note. The Note confirms that prepayment consideration is due only in years one through nine of the Note. There is no dispute that Frontier Properties defaulted on the Note within the first nine years. Under the terms of paragraph 7, LaSalle could demand payment of all the debt, including prepayment consideration, after an event of default. Paragraph 7 is independent of paragraph 5(e), and imposes its own requirements. Therefore, whether or not Sleutel made a "voluntary prepayment" here is irrelevant.

8

Sleutel is liable for the prepayment consideration due to the default on the Note within the first nine years of the Note's execution.

We also take notice of paragraph 5(c) of the Note, which states that: "Except as otherwise set forth in the Mortgage, no Prepayment Consideration will be due for involuntary prepayments resulting from any Casualty (as defined in the Mortgage) or Condemnation (as defined in the Mortgage)." Frontier's default on the Note can hardly be said to fall under the definitions of casualty or condemnation. This paragraph therefore implies that prepayment consideration is due for other "involuntary prepayments," of which a non-judicial foreclosure sale may be one, though we need not decide this issue.

We hold therefore that prepayment consideration was properly accelerated and is due under the terms of the Note.

IV

In sum, we hold that Sleutel, as a guarantor, can waive any right of offset that he may have under § 51.003. Further, we hold that prepayment consideration by Sleutel is due under the terms of the Note. The judgment of the district court is

AFFIRMED.