**LASALLE BANK N.A.**

v.

**MOBILE HOTEL PROPERTIES, LLC, et al**

**No. Civ.A. 03–2225.**

United States District Court, E.D. Louisiana.

Sept. 7, 2004.

Richard Terrell Simmons, Jr., Joseph L. Spilman, III, Hailey, McNamara, Hall, Larmann & Papale, Metairie, LA, and Gregory A. Cross, Charles M. Campisi, Baltimore, MD, for Plaintiff.

Charles D. Marshall, III, Chaffe, McCall, Phillips, Toler & Sarpy, LLP, New Orleans, LA, Elwood F. Cahill, Jr., James M. Garner, Joshua Simon Force, Sher Garner Cahill Richter Klein McAlister & Hilbert, LLC, New Orleans, LA, Judy Y. Barrasso, Steven W. Usdin, Celeste R. Coco-Ewing, Barrasso Usdin Kupperman Freeman & Sarver, LLC, New Orleans, LA, for Defendants.

## AMENDED ORDER AND REASONS

LIVAUDAIS, Senior District Judge.

Four motions are before the Court. First, LaSalle Bank N.A. ("LaSalle" or "Lender") has filed a motion for summary judgment as to its claims against defendants Mobile Hotel Properties, L.L.C. ("Mobile Hotel" or "Borrower"), and Columbus Hotel Properties, L.L.C. ("Columbus" or "Guarantor") for a deficiency judgment in the amount of $3,116,068.85, and for dismissal of defendants' counterclaim against LaSalle for declaratory judgment as to LaSalle's claim for a "defeasance fee", and defendants' counterclaim for damages for unjust enrichment (r.d. # 57). Second, Mobile Hotel and Columbus have filed a motion for partial summary judgment for dismissal of LaSalle's claim that Mobile Hotel defaulted on the note when it amended its articles of incorporation because LaSalle failed to provide notice and an opportunity to appeal the default (r.d. 53). Third, Mobile Hotel and Columbus filed a motion for partial summary judgment seeking a declaratory judgment that the mortgage documents do not provide a basis for recovery of a "defeasance fee" in the event of a default and acceleration of the note (r.d. 55). Fourth, LaSalle filed a motion to strike defendants' jury demand for its counterclaim of unjust enrichment (r.d. 51).

## BACKGROUND

This is a collection matter arising out of a loan to Mobile Hotel by Lasalle.[1] The promissory note (hereinafter "the note"), dated October 26, 1995, was secured by a mortgage, assignment of leases and rents, and security agreement (the "loan documents") on a hotel located at 600 Beltline Highway in Mobile, Alabama, operated as a Ramada Inn.[2] Mobile Hotel acquired the loan by assignment from the original bor-

---

1. LaSalle is the Trustee for the Registered Holders of Asset Securitization Corporation, Commercial Mortgage Pass–Through Certificates, Series 1996–D2 (the "Trust") pursuant to a Pooling and Servicing Agreement dated March 1, 1996 (the "PSA") between LaSalle as Trustee and Pacific Mutual Life Insurance Co., (the "Servicer") and CMSLP (the "Special Servicer" which administers portfolio loans that are in default.) The Trust holds a portfolio of loans for the benefit of the registered holders of securities who purchased their securities seeking a return on investments in the portfolio. The Trust is the owner and holder of the mortgage note payable by the Borrower, Mobile Hotel. The note was assigned to the Trust by Nomura Asset Capital Corporation, the original Lender, on or about March 1, 1996.

2. The defendant entity was originally formed for the purpose of acquiring, owning and operating the hotel property that secured the loan.

rower, Mobile Inn Associates. In order to induce the lender to agree to the assignment of the loan to Mobile Hotel, Columbus (the sole member of Mobile Hotel Properties, L.L.C.) guaranteed the loan. Ultimately, LaSalle foreclosed on the property. LaSalle now seeks to collect a deficiency balance it claims is due under the mortgage note and other loan documents. The salient facts are undisputed and the sole issue in this non-jury case is the interpretation of the loan documents.

### Undisputed Facts

1. Between January 26, 2000, and June 30, 2001, Columbus made multiple cash advances to Mobile Hotel, all without written authorization by LaSalle, which were evidenced and "secured" by an unsecured "Promissory Note" by Mobile Hotel to Columbus, dated June 30, 2001, in the principal amount $3,608,709.87, at 0% interest.

2. In May of 2001, the loan to Mobile Hotel was transferred to CMSLP, the special servicer which administers portfolio loans that are in default.

3. On August 2, 2001, D.J. Morakis, asset manager for CMSLP, wrote a letter to Karl Munster of Columbus Hotel Properties, L.L.C., informing him that Mobile Hotel's intercompany debt was prohibited by the mortgage, and that pursuant to the terms of the mortgage, the company had 30 days to cure the default.[3] Plaintiff's memorandum in opposition to defendants' motion for partial summary judgment on the "defeasance fee", Ex. 5.

4. On August 17, 2001, Munster sent a letter to Morakis explaining how Columbus managed its cash flow to cover the needs of the individual hotels held in its hotel group, and attaching financial statements showing the multiple cash advances to Mobile Hotel and a copy of the "Promissory Note" by Mobile Hotel to Columbus dated June 30, 2001. Plaintiff's memorandum in support of motion for summary judgment ("P."), Ex. 11, Letter and attachments. By October of 2001, the total of Mobile Hotel's debt to Columbus exceeded $4,000,000.00. P.Ex. 12.

5. On November 11, 2001, Mobile Hotel missed its scheduled monthly payment to LaSalle and made no additional mortgage payments. P.Ex. 2, affidavit of Lea Land, ¶ 7.

6. On November 28, 2001, Mobile Hotel amended its original Articles of Organization by changing the organization's name and changing its purpose from "solely ... the acquisition, ownership, operation and management of a hotel located at 600 South Beltline Highway, Mobile, Alabama 36608, and such activities as are necessary, incidental or appropriate in connection therewith" to "any lawful activity for which limited liability companies may be formed under the Act." See Exhibit K attached to Second Amended Complaint, "Articles of Amendment to the Articles of Organization of Columbus Mobile Hotel Properties, L.L.C.", Article II.

7. On February 7, 2002, Lasalle accelerated the indebtedness under the note.

8. On March 8, 2002, Mobile Hotel filed a bankruptcy petition in Alabama that was subsequently dismissed on August 6, 2002.

9. On September 20, 2002, LaSalle foreclosed on the hotel property with the consent of Mobile Hotel and Columbus. P. 2, affidavit of Lea Land.

10. LaSalle placed a winning credit bid of $6.9 million for the hotel property at the foreclosure sale, and subsequently gave Mobile Hotel a credit of $6.9 million on the debt due to LaSalle. *Id.*

---

**3.** Mr. Morakis also offered to attempt to resolve the issue by trying to have the prohibition on additional debt waived.

11. LaSalle eventually marketed and sold the hotel property for $2.1 million. *Id.*

In its lawsuit against defendants, LaSalle alleges that Mobile Hotel defaulted on its loan under the terms of the loan documents when it (1) failed to make the scheduled payment due on November 11, 2001, and any subsequent payments; (2) failed to obtain LaSalle's consent prior to incurring additional debt when it borrowed $3.6 million from its guarantor; (3) failed to maintain its corporate status as a "single purpose entity"; and (4) failed to perform all of the covenants and conditions of the loan documents. LaSalle's motion for summary judgment requests judgment on its claims that pursuant to the loan documents, Mobile Hotel is liable for a total deficiency amount of $3,116,068.85, including a yield maintenance premium and defeasance fee totaling $2,161,484.00. The remainder includes late fees, interest, and other costs and expenses including appraisal costs, advances to preserve the property in foreclosure, third party reports and attorney's fees, which continue to accrue. LaSalle argues that it is entitled to collect the deficiency from both Mobile Hotel as borrower and Columbus as guarantor because, although the mortgage was "non-recourse", Mobile Hotel violated covenants and conditions of the mortgage that triggered its conversion to full recourse when it amended its Articles of Organization and when it incurred additional debt without LaSalle's consent. The motion also asks for dismissal of defendants' counterclaims for declaratory judgment and unjust enrichment against LaSalle.

Defendants' first motion for partial summary judgment requests a declaratory judgment on its counterclaim that LaSalle is not entitled to the yield maintenance/defeasance fees under the loan documents. Their second motion for partial summary judgment alleges that they are not liable for the deficiency amount because LaSalle failed to provide Mobile or Columbus with notice and an opportunity to cure the alleged default that occurred when Mobile Hotel amended its corporate documents, triggering the full recourse provision.

### *ANALYSIS*

A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). An issue is material if its resolution could affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *See Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999). However, once a moving party properly supports a motion for summary judgment, the nonmoving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Lawrence v. Univ. of Tex. Med. Branch at Galveston,* 163 F.3d 309, 311–12 (5th Cir.1999), *quoting Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1047–48 (5th Cir.1996). The nonmoving party cannot satisfy its burden with "unsubstantiated assertions" or "conclusory allegations." *Id.*

Alabama law applies to the interpretation of the loan documents at issue. Under Alabama law, when a contract's terms are clear and certain, it is the Court's duty to determine the meaning of the agreement between the parties. *Steward v. Champion Intern. Corp.,* 987 F.2d 732, 734 (11th Cir.1993). "The fact that the

parties adopt conflicting interpretations of the contract in the throes of litigation does not create ambiguity where none exists." *Id.*

1. *Do the loan documents provide for acceleration of the yield maintenance premium/defeasance fee[4] upon the lender's acceleration of the loan?*

■ LaSalle argues that the language at ¶ 4 of the Mortgage Note provides that defendants are liable for the defeasance fee if the lender accelerates the note. Paragraph 4 provides that upon any event of default, such as the non-payment of a monthly payment required under the Note, "[t]he whole of the principal sum of this Note, together with all interest accrued and unpaid thereon and *all other sums due under the Loan Documents* ... shall without notice become immediately due and payable at the option of Payee...." LaSalle claims that the defeasance fee is a sum due under the loan documents.

Paragraph 6 of the mortgage note provides for the borrower's prepayment of the loan. Pursuant to its terms, the borrower can prepay the note and release the mortgaged property from the mortgage lien prior to the optional prepayment date "according to the terms and provisions set forth in Paragraph 56 of the Mortgage (the 'Defeasance Option')." That paragraph further provides that prior to the optional prepayment date and following the occurrence of any event of default, in order to redeem the property free of any liens the borrower can still prepay the debt in full and, in addition to the debt, the yield maintenance premium, if any, that would be required under the defeasance option.

Paragraph 56 of the mortgage sets out in detail the terms and conditions precedent for the release of the mortgaged property prior to its optional prepayment

date if no default exists. Those conditions include payment of the "defeasance deposit" and a "yield maintenance premium" as those terms are defined in ¶ 56 of the mortgage. The yield maintenance premium is an amount that, when added to the remaining principal amount of the note, "will be sufficient to purchase U.S. obligations providing the required Scheduled Defeasance Payments...." *See* R.D. 15, Second Amended Complaint—Ex. F, Mortgage, ¶ 56. In other words, the yield maintenance premium is intended to provide a replacement stream of income to the investors equal to the interest payments lost by the borrower's prepayment of the loan. It is in effect a payment of the unearned interest due to the lender.

Mobile Hotel argues that a lender who accelerates a secured debt is not entitled to collect a prepayment penalty unless the loan documents expressly provide that such a penalty be paid upon acceleration, and that the loan documents here do not so provide. The jurisprudence supports the argument. In *Matter of LHD Realty Corp.,* 726 F.2d 327 (7th Cir.1984), the Seventh Circuit discussed the issue as follows:

> The parties agree that prepayment premiums serve a valid purpose in compensating at least in part for the anticipated interest a lender will not receive if a loan is paid off prematurely. Among other things, a prepayment premium insures the lender against loss of his bargain if interest rates decline. Accordingly, reasonable prepayment premiums are enforceable. *See generally* Annot., 86 A.L.R.3d 599 (1978; Annot., 75 A.L.R.2d 1265 (1961)).

> There are, however, some limitations upon the right to receive a prepayment premium. For one, the lender loses its right to a premium when it elects to accelerate the debt. [ ] This is so be-

---

4. For simplicity, the Court will refer to the "defeasance fee".

cause acceleration, by definition, advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity.

*Id.* at 330–331 (citations and footnotes omitted). *Accord U.S. v. Harris*, 246 F.3d 566, 573–74 (6th Cir.2001)(Lenders are entitled to the benefit of prepayment premiums upon the borrower's default and the lender's acceleration of the debt when the lender and borrower have bargained for that provision in the loan documents.)

In *LaSalle Bank Nat. Ass'n v. Sleutel*, 289 F.3d 837 (5th Cir.2002), LaSalle Bank accelerated the note upon the borrower's default and foreclosed on the mortgaged property securing the note. *Id.* at 838–39. The note included ¶ 5(e) captioned "Prepayment After Event of Default", which provided that after an event of default the borrower may "tender payment of an amount sufficient to satisfy the Debt at any time prior to the sale" of the property, and "such tender ... shall be deemed to be a voluntary prepayment" under the note and lender shall be entitled to the "applicable Prepayment Consideration." *Id.* at 842. The outstanding debt at the time of the foreclosure was $1,723,283.20, and LaSalle received, at most, $1.7 million from the foreclosure sale. *Id.* The defendant argued that under the language of ¶ 5(e) LaSalle Bank was not entitled to collect a prepayment premium because a "full tender" of the debt was not made. *Id.*

The Fifth Circuit disagreed, although it did not decide whether the sale of the property by way of the foreclosure was "full tender of a 'voluntary prepayment'" pursuant to ¶ 5(e) of the note. The Court concluded instead that under the language of ¶ 7 of the Note, prepayment consideration may be accelerated along with the debt after an event of default. *Id.* That paragraph provided as follows:

*Acceleration.* The whole of the Debt, including without limitation, the principal sum of this Note, all accrued interest and all other sums due under this Note, the Mortgage and the Other Security Documents, *together with any applicable Prepayment Consideration,* shall become immediately due and payable at the option of the Lender, without notice, at any time following the occurrence of an Event of Default.

*Id.* (emphasis supplied). While the language of ¶ 5(e) of the note in the *Sleutel* case is virtually identical to the corresponding language in ¶ 6 of the mortgage note at issue here, neither the mortgage note, the mortgage, nor any other loan documents in this case contain language corresponding to the "Acceleration" provision in the *Sleutel* Note. Rather, ¶ 7 of the Mobile Hotel mortgage note, generally addressing the issue of usury and interest that may be due to the lender under certain circumstances, including the lender's "exercise of the option to accelerate the Maturity Date", states as follows:

Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Payee to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

LaSalle is not entitled to collect the defeasance fee from the borrower or the guarantor upon its acceleration of the note. Mobile Hotel is entitled to partial summary judgment dismissing LaSalle's claim to a $2,161,484.00 defeasance fee.

■ Mobile Hotel next argues that La-Salle can not collect the more than $763,897.23 claimed as "other costs and expenses" because (1) LaSalle is not entitled to collect the $493,815 for expenses incurred *after* the foreclosure sale; (2) La-

Salle is not entitled to collect "advance interest" damages, that is, interest on "advances" LaSalle made "on the property", and (3) that the amount of attorney's fees included is not supported by itemized statements.

Paragraph 26(h) of the mortgage authorizes LaSalle to recover its costs incurred in the exercise of its remedies. Pursuant to ¶ 25 of the mortgage, LaSalle has the right to advance costs to protect its interest in the mortgaged property and to subsequently recover those costs from the borrower. While LaSalle is entitled to collect its costs and expenses, including legal fees, Mobile Hotel has raised genuine disputes as to whether LaSalle is actually entitled to all of the "costs and expenses" it claims pursuant to the loan documents. Moreover, Mobile Hotel argues that the affidavit of Lea Land, a vice-president of LaSalle Bank, which is the only evidence offered by LaSalle in support of its motion for summary judgment as to its claimed costs and expenses, is not competent summary judgment evidence. The Court agrees. LaSalle produced no invoices or other documentation as evidence of those claimed costs and expenses, nor did it produce any direct testimony to identify and explain its costs and expenses. LaSalle is not entitled to summary judgment on its claims for costs and fees.

2. *Did Mobile Hotel's amendment of its Articles of Organization trigger the full recourse condition of the Mortgage?*

■ The mortgage is a "non-recourse" mortgage, which means that the borrower is not personally liable for the indebtedness and the lender's sole recourse upon the borrower's default is against the property securing the note. The mortgage contains "Recourse Provisions" at ¶ 55 which provide in pertinent part as follows:

Notwithstanding anything to the contrary in any of the Loan Documents, . . . (ii) *the Debt shall become fully recourse to Mortgagor* in the event that: . . . (B) Mortgagor . . . fails to maintain its status as a single purpose entity, [ ] as required by, and in accordance with the provisions of, this Mortgage; (C) Mortgagor fails to obtain Mortgagee's prior written consent to any subordinate financing or other voluntary lien encumbering the Mortgaged Property;. . . . [5]

(Emphasis added.) The mortgage note, at ¶ 11, and the guaranty contain substantially identical provisions.[6]

The Single Purpose Entity/Separateness provision of the mortgage, at ¶ 10, includes a list of fourteen separate conditions, representations, covenants or warranties required of the mortgagor that describe and define the scope and limits of the single purpose entity and separateness requirements.[7] The covenant pertinent here is as

---

**5.** See Exhibit F attached to Second Amended Complaint, "Mortgage, Assignment of Leases and Rents and Security Agreement", ¶ 55 at p. 44.

**6.** See Exs. A and C, *id.*

**7.** See Ex. F, *supra,* at ¶ 10, p. 17. In its memorandum in support of its motion for summary judgment, LaSalle argues that several additional warranties and covenants were also violated by Borrower, further compromising its status as a single purpose entity and triggering the full recourse provision of the Mortgage and Mortgage Note. Finding

that the Borrower's violation of any one of the covenants listed are sufficient to make the Mortgage a full recourse obligation, the Court does not discuss these additional "violations".

LaSalle argues at length that in addition to the "single purpose entity" provision, Mobile Hotel also breached in particular the provision at (d) prohibiting the mortgagor from incurring and indebtedness or obligations without the written consent of the lender. The Court agrees but finds that it is not necessary to discuss the issue because Mobile Hotel's breach of the "single purpose entity" covenant alone is sufficient to trigger the full recourse provision of the mortgage.

follows:

(g) Mortgagor has done or caused to be done and will do all things necessary to preserve corporate formalities and preserve its existence, and Mortgagor will not, nor will Mortgagor permit any constituent party or Guarantor to amend, modify or otherwise change the partnership certificate, partnership agreement, articles of incorporation and bylaws, trust or other organizational documents of Mortgagor or such constituent party or Guarantor in a manner which would adversely affect the Mortgagor's existence as a single purpose entity.

Mobile Hotel argues that the "innocuous" change in the "boilerplate" language of its Articles of Organization did not alter its "status" as a single purpose entity as that phrase is used in the mortgage. It resorts to linguistic gymnastics to support the argument that the change did not trigger the full recourse provisions of the mortgage because it did not "adversely affect" Mobile Hotel's existence as a single purpose entity since it continued to "operate" solely as a single purpose entity, therefore its "status" or "state of affairs" of being a single purpose entity did not change.

The phrases used in Mobile Hotel's Articles of Organization to define its purpose may well have been "boilerplate" language, but the words still have meaning. It is irrelevant that Mobile Hotel did not ever actually engage in, or for that matter, never intended to engage in, any activity other than the operation of the hotel property. Its motive for amending its Articles of Organization is also irrelevant. The change in the language of its Articles of Organization constitutes a legal, formal and effective amendment to the articles that changed the company's status from an entity whose *sole* purpose, under the terms of its state charter, is to engage in the *single* activity expressly identified in the Articles of Organization to an entity whose purpose is to engage in *any* lawful activity.

The language of the mortgage means what it says. Mobile Hotel's amendment of its Articles of Organization breached the covenant to maintain its status as a single purpose entity and triggered the full recourse provision of the mortgage.

3. *Were defendants entitled to notice and an opportunity to cure Mobile Hotel's breach of the "single purpose entity" provision?*

■ Defendants point to the language of the mortgage at ¶ 23, captioned "Events of Default", and ¶ 25, "Right to Cure Defaults", in support of its argument that it is entitled to partial summary judgment dismissing LaSalle's claim for a defeasance fee because LaSalle failed to give defendants the required minimum of 30 days notice and opportunity to cure the breach of the single purpose entity provision. That notice requirement applies to an enumerated list of "events of default", not to a breach of the terms and conditions of the mortgage. The guaranty executed by Columbus provides that the Guarantor "irrevocably and unconditionally" guarantees the payment of the full amount of the Mobile Hotel's debt and performance of all of Mobile Hotel's obligations should it fail to maintain its status as a single purpose entity.[8] In addition, the guarantor waived notice of the occurrence of any breach by borrower or event of default.[9] Moreover, there is no requirement in the mortgage that either the borrower or the guarantor receive notice that Mobile Hotel breached one or more of the covenants that trigger the full recourse obligations of the defen-

---

**8.** See Exhibit A attached to Second Amended Complaint, "Guaranty", Secs. 1.1 and 1.2 at p. 4.

**9.** See *id.,* 1.7 at p. 5.

dants. That is not an "event of default" that can be cured.

It cannot be said that defendants were naive or unsophisticated borrowers. They bargained for the assignment of the loan to Mobile Hotel and Columbus agreed to the terms of the Guaranty in order to induce LaSalle to agree to the assignment of the loan to Mobile Hotel. It cannot now avoid its obligations under the Guaranty. Defendants are not entitled to partial summary judgment on the issue of notice and an opportunity to cure the breach.

### 4. *Mobile Hotel's counterclaim for unjust enrichment*

■ Defendants' second counterclaim alleges that Columbus injected $4,000,000 in cash into the mortgaged property prior to the foreclosure, and that LaSalle was unjustly enriched by that amount because it "received" or "recovered" $6,900,000 million as a result of its foreclosure on the hotel property. Not only is the argument illogical, Mobile Hotel has offered no evidence of the alleged enrichment.

As a result of the foreclosure sale LaSalle "received" or "recovered" only a hotel property worth much less than the amount of its successful credit bid of $6,900,000, notwithstanding any prior appraisals to the contrary. LaSalle gave Mobile Hotel a credit of the $6,900,000 against its total debt to LaSalle. LaSalle actually received or recovered only $2,100,000 when it eventually was able to market and sell the property to a third party. There was no enrichment, much less unjust enrichment. LaSalle is entitled to summary judgment dismissing defendants' counterclaim for unjust enrichment.

### 5. *LaSalle's motion to strike jury demand*

Finally, LaSalle filed a motion to strike Mobile Hotel's jury demand on its claim for unjust enrichment. Because the Court finds that LaSalle is entitled to summary judgment dismissing that claim, the motion to strike the jury demand is moot.

Accordingly,

IT IS ORDERED that LaSalle Bank N.A.'s motion for summary judgment is DENIED as to its claims against defendants Mobile Hotel Properties, L.L.C., and Columbus Hotel Properties, L.L.C., for recovery of a "defeasance fee" of $2,161,484.00 and other costs and expenses of in the amount of $763,897.23, and is DENIED as to Mobile Hotel Properties, L.L.C.'s, and Columbus Hotel Properties, L.L.C.'s, counterclaim against LaSalle for declaratory judgment that LaSalle is not entitled to collect a defeasance fee from defendants, and is GRANTED as to LaSalle's claim that Mobile Hotel, L.L.C.'s, amendment of its Articles of Organization triggered the full recourse provision of the mortgage, and is GRANTED as to dismissal of Mobile Hotel Properties, L.L.C.'s, and Columbus Hotel Properties, L.L.C.'s counterclaim against LaSalle Bank N.A. for unjust enrichment; and

IT IS FURTHER ORDERED that Mobile Hotel Properties, L.L.C.'s, and Columbus Hotel Properties, L.L.C.'s motion for partial summary judgment for dismissal of LaSalle's claims against defendants for failure to provide notice and an opportunity to cure the breach is DENIED; and,

IT IS FURTHER ORDERED that Mobile Hotel Properties, L.L.C.'s, and Columbus Hotel Properties, L.L.C.'s motion for partial summary dismissing LaSalle's claims for recovery of a "defeasance fee" of $2,161,484.00 is GRANTED; and,

IT IS FURTHER ORDERED that LaSalle's motion to strike defendants' jury demand for its counterclaim of unjust enrichment is DISMISSED AS MOOT.