**INTERSTATE 35/CHISAM ROAD, L.P. and Malachi Development Corporation, Appellants**

**v.**

**Mehrdad MOAYEDI, Appellee.**

**No. 05–11–00209–CV.**

Court of Appeals of Texas, Dallas.

Aug. 2, 2012.

Rehearing and Rehearing En Banc Overruled Oct. 8, 2012.

F. Colin Durham, Key Harrington
Barnes, PC, Dallas, TX, for Appellants.

C. Gregory Shamoun, Jonathan J. Cunningham, Shamoun & Norman, LLP, Dallas, TX, for Appellee.

Before Justices O'NEILL, MARTIN
RICHTER, and LANG.

## OPINION

Opinion By Justice LANG.

This appeal raises a question of whether general language waiving defenses in a debt guaranty agreement includes waiver of a specific statutory right of offset under section 51.003(c) of the Texas Property Code. We conclude under the facts of this case that it does.

In this case, Interstate 35/Chisam Road, L.P., and Malachi Development Corporation ("I–35") appeal from a summary judgment that they take nothing in their suit against Mehrdad Moayedi who guaranteed a loan made by I–35 to Villages of Sanger, Ltd. I–35 sued Moayedi based upon his guaranty to recover the balance remaining on Villages's promissory note after the non-judicial foreclosure sale of real property that secured the note. *See* TEX. PROP. CODE ANN. § 51.003 (West 2007). Because the property was sold for less than the fair market value, Moayedi pleaded in response to I–35's petition that he was entitled to offset the deficiency by the difference between the fair market value and the sale price pursuant to section 51.003(c) of the property code. *See id.* § 51.003(c).

I–35 replied that Moayedi waived the right of offset pursuant to the language in the guaranty.

Moayedi filed a traditional motion for summary judgment which argued the right of offset pursuant to section 51.003(c) could not be waived by the general terms in the guaranty agreement. I–35 filed a motion for summary judgment arguing conversely that the general language of the guaranty agreement waived any defense of offset to I–35's deficiency claim. The trial court granted Moayedi's motion and denied that of I–35.

We conclude the trial court's judgment granting summary judgment for Moayedi and denying I–35's motion for summary judgment is in error. Accordingly, we reverse the trial court's judgment and render judgment that Moayedi's motion for summary judgment is denied. Further, because it is without dispute the language of the guaranty agreement limits Moayedi's liability to $196,000 plus interest and collection costs, we render judgment that I–35's motion for summary judgment is granted and that it recover $196,000 from Moayedi plus interest and costs as specified in the guaranty. This case, as rendered, is remanded to the trial court for a determination of the recoverable interest and costs.

## I. Background

### A. The Facts

The facts are undisputed. Villages, a Texas limited partnership, executed a $696,000 promissory note payable to I–35 over a three-year period. The note was secured by a deed of trust covering real property in Denton County. Moayedi, as president of Villages's general partner Pars Investment, Inc., signed the note and guaranty agreement. The guaranty agreement provided in relevant part that Moayedi's liability would be limited to $196,000 plus "accrued interest, and ... collection costs including but not limited to attorney fees and costs of court." The agreement also contained the following two paragraphs at issue in this appeal:

7. Guarantor further agrees that this Guaranty shall not be discharged, impaired or affected by ... (b) any defense (other than the full payment of the indebtedness hereby guaranteed in accordance with the terms hereof) that the Guarantor may or might have as to Guarantor's respective undertakings, liabilities, and obligations hereunder, each and every such defense being hereby waived by the undersigned Guarantor.

13. To the extent permitted by law, Guarantor expressly waives and relinquishes all rights and remedies of surety, including but not limited to, all rights and remedies provided under Chapter 34 of the Business and Commerce Code of the State of Texas.

When Villages defaulted less than a year after execution of the note, I–35 foreclosed on the property. At the time, the fair market value of the realty was $840,000, but I–35 purchased the property at the foreclosure sale for $487,200. After applying all credits and offsets, including the proceeds from the foreclosure sale, I–35 claimed a balance due of $266,748.84 remained "together with attorney's fees and related expenses."

I–35 sued Moayedi after he and Villages failed to pay the balance I–35 claimed was due. Moayedi answered, asserting as affirmative defenses ambiguity of contract, limitation of liability, and the right to offset under section 51.003 of the property code. I–35 then supplemented its petition and claimed Moayedi had contractually waived his right to offset.

## B. The Summary Judgment Motions and Argument on Appeal

The parties' arguments on appeal are the same arguments they presented to the trial court in their motions for summary judgment. Moayedi does not dispute he personally guaranteed the note or that he failed to pay the amount I–35 alleged remained after Villages's default and the property's foreclosure sale. Instead, he defends against I–35's deficiency claim by asserting the right of offset pursuant to section 51.003 of the property code.

Section 51.003 provides for a determination of the fair market value of the property sold at foreclosure. *See* Tex. Prop.Code Ann. § 51.003(b). Then, if the fact-finder determines the fair market value is greater than the foreclosure sale price, the person obligated on the indebtedness is entitled to offset the deficiency amount by the difference between the fair market value and the sale price. *See id.* § 51.003(c).

Moayedi maintains because the property was sold at foreclosure for less than the fair market value, he was entitled to an offset against the deficiency in an amount of $352,800, the difference between the fair market value of the property and the sale price. *See id.* Also, he asserts because the offset amount was greater than the $196,000 sum plus interest and costs for which he was responsible, he was entitled to judgment as a matter of law that any deficiency is extinguished by the offset. *See id.*

Addressing I–35's contention he waived the right of offset, Moayedi argues that "the broad, vague language of Paragraphs 7 and 13 of the Guaranty [was] not a waiver of *any rights* ... much less the § 51.003 right to offset." Moayedi reasons

paragraph seven's language purporting to waive "any defense ... to [any] undertakings, liabilities, and obligations" did not encompass his "right" to offset because the offset "right" is not a defense to actual payment, but a claim for proper calculation of the deficiency. He contends paragraph thirteen's language stating he waived "all rights and remedies of surety" did not encompass his section 51.003 right to offset because by its own terms it applied to sureties.

Next, Moayedi cites recent cases he contends support his position that the waivers in paragraph seven and thirteen are too broad and general to waive his specific statutory right to offset pursuant to section 51.003. Those cases hold very specific language waiving offset rights is enforceable. *See LaSalle Bank Nat'l Ass'n v. Sleutel*, 289 F.3d 837, 842 (5th Cir.2002); *Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 279–80 (Tex.App.-Houston [1st Dist.] 2004, pet. dism'd) (op. on reh'g). According to Moayedi, unlike the broad, general language in his guaranty, in *LaSalle*, the guaranty agreement language specifically waived the "right of offset" and in *Segal*, the guaranty agreement language specifically waived "all rights, remedies, claims and defenses based upon or related to Section[ ] 51.003 ... of the Texas Property Code." *See LaSalle*, 289 F.3d at 840; *Segal*, 155 S.W.3d at 277–78. Moayedi argues if the general language in the guaranty at issue were construed to waive a specific statutory right, that result would "frustrate[ ]" the "stated purpose" of section 51.003. Moayedi also contends the El Paso Court of Appeals has implicitly rejected the argument that the right to offset under section 51.003 can be waived.[1] *See Cabot Capital Corp. v. USDR, Inc.*,

---

1. However, we note the El Paso Court of Appeals addressed sufficiency and evidentiary issues first. Finding error, that court remanded the case for a new trial without addressing the extent of any waiver in the guaranty. *See Cabot,* 346 S.W.3d at 638–40.

346 S.W.3d 634, 638 (Tex.App.-El Paso 2009, pet. denied).

Finally, Moayedi contends the Texas House of Representatives "unanimously passed" an amendment during the regular session of the 81st Legislature that "would have expressly prohibited" waiver of the rights afforded in section 51.003. According to Moayedi, although the bill was not adopted by the Senate, the bill was, "at a minimum, a true indication of the [legislature's] efforts ... to demonstrate to the courts what the public policy of the State is on the issue."

In its response to Moayedi's motion, in its own motion for summary judgment, and before us, I–35 does not dispute the fair market value of the real estate when sold was greater than the foreclosure sale price, that Moayedi's liability was limited to $196,000 plus interests and costs, or that application of the offset would extinguish the deficiency. Instead, relying on *LaSalle* and *Segal*, it urges that the broad waiver language in paragraphs seven and thirteen are enforceable as to any section 51.003 rights.[2]

## II. Standard of Review

■■■ A party moving for traditional summary judgment under Texas Rule of Civil Procedure 166a(c) must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R. Civ. Proc. 166a(c). If the movant discharges its burden, the burden shifts to the non-movant to present to the trial court any issue that would preclude summary judgment. *Hackberry Creek Country Club, Inc. v. Hackberry Creek*

*Home Owners Ass'n*, 205 S.W.3d 46, 50 (Tex.App.-Dallas 2006, pet. denied). When, as here, both parties move for summary judgment, each party bears the burden of establishing it is entitled to judgment as a matter of law. *Id.* On appeal, the reviewing court applies a de novo standard of review, determines all questions presented, and, if it determines error, renders the judgment the trial court should have rendered or reverses and remands if neither party has met its summary judgment burden. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005); *Hackberry Creek*, 205 S.W.3d at 50. If the issue raised is based on undisputed and unambiguous facts, as in this case, the appellate court determines the question presented as a matter of law. *Johnston v. Crook*, 93 S.W.3d 263, 267 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (op. on reh'g).

## III. Applicable Law

### A. Contract Interpretation

■■■ Courts construe guaranty agreements as any other contract. *Mid–South Telecomm. Co. v. Best*, 184 S.W.3d 386, 390 (Tex.App.-Austin 2006, no pet.). The interpretation of an unambiguous contract is a question of law for the court. *MCI Telecomm. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 650 (Tex.1999). When parties disagree over the meaning of an unambiguous contract, the court must determine the parties' mutual intent by examining the entire instrument. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996); *Wells Fargo Bank, Minn., N.A. v. N. Cent. Plaza I, L.L.P.*, 194

---

**2.** In its brief on the merits, I–35 states the "unambiguous language of paragraphs 7 and 13 of the Guaranty makes clear that Moayedi contractually waived any right to assert the rights and remedies otherwise provided by section 51.003." Although I–35 uses the term "unambiguous," the parties do not contend the guaranty agreement is itself ambiguous or susceptible to more than one meaning. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Rather, the issue is the scope of the waiver paragraphs.

S.W.3d 723, 726 (Tex.App.-Dallas 2006, pet. denied) (citing *Coker v. Coker,* 650 S.W.2d 391, 393–94 (Tex.1983)). The court must favor an interpretation that harmonizes and gives effect to all the provisions of the contract so that none will be rendered meaningless and no single provision taken alone will be given controlling effect. *Heritage Res.,* 939 S.W.2d at 121; *Wells Fargo,* 194 S.W.3d at 726. Unless the agreement shows the parties used a term in a technical or different sense, the terms are given their plain, ordinary, and generally accepted meaning. *Heritage Res.,* 939 S.W.2d at 121.

### B. Public Policy and Waiver

▮▮▮ The Texas Constitution protects the freedom to contract, and the Texas Supreme Court has long recognized a strong public policy in favor of preserving the freedom of contract. *See* TEX. CONST. art. I, § 16; *Fairfield Ins. Co. v. Stephens Martin Paving, L.P.,* 246 S.W.3d 653, 664 (Tex.2008); *Lawrence v. CDB Servs., Inc.,* 44 S.W.3d 544, 553 (Tex.2001), *superseded on other grounds by* TEX. LAB.CODE ANN. § 406.003(e) (West 20), *as explained in Storage & Processors, Inc. v. Reyes,* 134 S.W.3d 190, 192 (Tex.2004). Absent a statute or fundamental public policy precluding waiver, a party may contractually waive even constitutional or statutory rights, whether present or future. *Wright v. Sport Supply Grp., Inc.,* 137 S.W.3d 289, 294 (Tex.App.-Beaumont 2004, no pet.). In examining an agreement to determine if it is contrary to public policy, a court looks to whether the agreement has a tendency to injure the public good and considers the development and policies underlying any applicable statutes. *See Fairfield,* 246 S.W.3d at 666; *Lawrence,* 44 S.W.3d at 555; *Johnson v. Structured Asset Serv., LLC,* 148 S.W.3d 711, 726–27 (Tex.App.-Dallas 2004, no pet.). Unless the agreement contravenes some positive statute or some well-established rule of law, a court should refrain from characterizing the agreement as unenforceable and void as against public policy. *Lawrence,* 44 S.W.3d at 553 (quoting *Sherrill v. Union Lumber Co.,* 207 S.W. 149, 153–54 (Tex. Civ.App.-Beaumont 1918, no writ) (quoting 6 RULING CASE LAW § 119, at 710)); *see also Johnson,* 148 S.W.3d at 726–27 ("A state's public policy is embodied in its constitution, statutes, and the decisions of its courts.").

### C. Texas Property Code Section 51.003

Section 51.003 was designed to protect borrowers and guarantors in deficiency suits brought following the non-judicial foreclosure on realty. *See Long v. NCNB–Tex. Nat'l Bank,* 882 S.W.2d 861, 865 (Tex.App.-Corpus Christi 1994, no writ); *see also* House Research Org., Bill Analysis, Tex. H.B. 169, 72d Leg., R.S. (1991) (noting supporters favored the bill creating section 51.003 because it "would ensure that borrowers receive proper credit when their foreclosed property is sold and protect them against large deficiency judgments resulting from unreasonably low prices paid at foreclosure sales"). Further, section 51.003 provides for a judicial determination of the fair market value of the property and allows an offset against the deficiency in the amount by which the fair market value exceeds the sale price. *See* TEX. PROP.CODE ANN. § 51.003. However, in passing the bill into law, the legislature did not make the offset right non-waivable. *See id.; see also* House Fin. Inst. Comm., Bill Analysis, Tex. H.B. 2825, 72d Leg., R.S. (1991) (noting rejection of proposed amendment to section 51.003 that would prohibit its waiver); House Bus. & Commerce Comm., Bill Analysis, Tex. H.B. 3502, 81st Leg., R.S. (May 13, 2009) (proposing addition of section 51.0051 that would prohibit contractu-

al waiver of section 51.003's fair market value determination); House Bus. & Commerce Comm., Bill Analysis, Tex. C.S.H.B. 3502, 81st Leg., R.S. (May 19, 2009) (failing to include proposed addition of section 51.0051); *see also* Act of May 29, 2009, 81st Leg., R.S., ch. 1178, § 1, 2009 Tex. Gen. Laws 3741, 3741–44 (West) (final version of H.B. 3502) (current version at TEX. PROP.CODE ANN. § 5.008(b) (West Supp. 2011)).

Based on the legislature's failure to preclude waiver of the offset right, the Fifth Circuit Court of Appeals and the Houston First District Court of Appeals have, as noted by the parties, concluded waiver of the offset right provided in section 51.003 is not void as against public policy. The Fifth Circuit Court of Appeals in the *LaSalle* case concluded the following waiver language in a personal guaranty was not against public policy:

> To the extent allowed by applicable law, Guarantor expressly waives and relinquishes all rights and remedies now or hereafter accorded by applicable law to guarantors or sureties, including, without limitation: ... (III) any defense, right of offset or other claim which Guarantor may have against Borrower or which Borrower may have against Lender or the Holder of the Note....

*See LaSalle*, 289 F.3d at 840–42. In so doing, that court contrasted section 51.003 with several other provisions of the property code that specifically include anti-waiver sections. *See id.* at 841 n. 3 (citing as examples Texas Property Code sections 28.006(a) (prompt payment to contractors and subcontractors); 54.043(b) (residential landlord's liens); 59.004 (self-service storage facility liens); 62.022 (broker's lien); 82.004 (Uniform Condominium Act); 91.006(b) (landlord's duty to mitigate); 221.041(c) (timeshare purchaser's right to cancel)). That court considered those provisions "as evidence" that the legislature knew "how to preclude waiver of statutory provisions when it so desires" and the legislature's failure to do so with respect to the offset right in section 51.003 indicated an intent "to allow this provision to be waived." *Id.* at 841.

The First Court of Appeals in *Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267 (Tex.App.-Houston [1st Dist.] 2004, pet. dism'd) (op. on reh'g), concluded that a waiver "[of] all rights, remedies, claims, and defenses based upon or related to *Sections 51.003, 51.004,* and *51.005* of the Texas Property Code" was enforceable and not prohibited by public policy. *See Segal,* 155 S.W.3d at 278–80. That court noted the legislature had included anti-waiver provisions in section 51.002 and in "at least 11 other instances within the Property Code," but not in section 51.003. *See id.* at 279 & n. 17. The court further concluded the legislature "knew how to grant a nonwaivable right in chapter 51 of the property code" and its failure to do so in section 51.003 or its companion for judicial foreclosure sales, section 51.005, "implie[d] that the rights ... confer[red] are not so fundamental that they cannot be waived." *See id.* at 279. In support of its conclusion, that court noted, in its earlier case, *Chase Manhattan Bank, N.A. v. Greenbriar North Section II*, 835 S.W.2d 720 (Tex. App.-Houston [1st Dist.] 1992, no writ), it had found "[n]o 'fundamental policy' of Texas" was offended by enforcing a contractual provision that stated a guaranty agreement would be construed and enforced in accordance with New York state laws when application of those laws "effectively result[ed] in the creditor's total loss of any deficiency rights." *See id.* at 279–80 (citing *Chase,* 835 S.W.2d at 726–27). The First Court of Appeals in *Segal* reasoned that if no fundamental Texas policy was offended in the circumstance described in the *Chase* case, "then, by analo-

gy, it does not offend the fundamental policy of Texas for a party knowingly to waive its rights to challenge the foreclosure sale price in a deficiency suit." *Id.* at 280. Agreeing with the analysis and conclusions in *LaSalle and Segal,* the Austin Court of Appeals determined that a·guarantor may contractually waive his statutory rights to a fair market valuation and offset. *See Kelly v. First State Bank Cent. Tex.,* No. 03–10–00460–CV, 2011 WL 6938522, at *8–9 (Tex.App.-Austin Dec. 30, 2011, pet. granted, jdgm't vacated w.r.m.) (mem. op.) (waiver "[t]o the maximum extent permitted by applicable law … [of] all rights, remedies, claims, and defenses based upon or related to Sections 51.003 and 51.004 (and as to Guarantors, also Section 51.005) of the Texas Property Code").

## IV. Application of Law to Facts

Now, we must interpret the language in the guaranty agreement before us by reviewing the agreement as a whole along with the state's public policy to determine if I–35 discharged its burden to establish as a matter of law that Moayedi waived his right to offset under section 51.003. *See Hackberry,* 205 S.W.3d at 50; *Wright,* 137 S.W.3d at 294. Although I–35 maintains both paragraphs seven and thirteen preclude the application of section 51.003, I–35 failed to address Moayedi's argument to the trial court that paragraph thirteen applied exclusively to sureties. Accordingly, we limit our discussion to paragraph seven. *See McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 343 (Tex.1993) (non-movant's summary judgment response must expressly present all grounds that would defeat movant's right to summary judgment or these grounds cannot be assigned as error on appeal) (citing TEX.R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979)).

■ We first consider Moayedi's argument that, because section 51.003 functions as a means of determining the proper amount of the deficiency as opposed to avoiding liability altogether, it is not a defense and not included within the waiver language that applies only to "any defense." We cannot agree with Moayedi on this position. The section 51.003 offset provision·constitutes a defense because, if given effect, it would negate I–35's deficiency claim by an amount equal to the difference between the foreclosure sale price and the fair market value. *See Brown v. Am. Transfer & Storage Co.,* 601 S.W.2d 931, 936 (Tex.1980); *see also Compass Bank v. 288/59 GP LLC,* No. H–09–4099, 2011 WL 13688, at *3 (S.D.Tex. Jan. 4, 2011) (specifically stating section 51.003(b) is affirmative defense to breach of guaranty claim); *Mays v. Bank One, N.A.,* 150 S.W.3d 897, 899 (Tex.App.-Dallas 2004, no pet.) (construing property code section 51.005 as affirmative defense).

Next, we consider Moayedi's assertion that the *LaSalle* and *Segal* cases support his position that the waiver language in the guaranty he signed is too broad and vague, and that the waiver must specifically express either that section 51.003 rights are waived or the right of offset is waived. Again, we cannot agree with Moayedi. Those cases do not stand for that proposition. Rather, those cases hold that the guaranties those courts reviewed and that included specific language waiving the right to offset (*LaSalle* ) and rights under section 51.003 (*Segal* ) were enforceable to preclude section 51.003 offsets. *See LaSalle,* 289 F.3d at 840–42; *Segal,* 155 S.W.3d at 277–79. Further, those courts found the waivers did not violate Texas public policy. *See LaSalle,* 289 F.3d at 841; *Segal,* 155 S.W.3d at 279–80.

■ Although *LaSalle* and *Segal* will be helpful in our analysis, they do not

address the type of general language we have before us. Accordingly, we proceed with our analysis of the waiver language by first considering its plain meaning and specifically the terms "any," "each," and "every" as they appear in paragraph seven:

> Guarantor further agrees that this Guaranty shall not be discharged, impaired, or affected by . . . (b) *any defense* (other than the full payment of the indebtedness hereby guaranteed in accordance with the terms hereof) that the Guarantor may or might have as to guarantor's respective undertakings, liabilities and obligations hereunder, *each and every such defense* being hereby waived by the undersigned Guarantor. (Emphasis added.)

These terms, "any," "each," and "every," as used in paragraph seven are synonymous. *See Hime v. City of Galveston*, 268 S.W.2d 543, 545 (Tex.Civ.App.-Waco 1954, writ ref'd n.r.e.) ("the word 'any' has been judicially construed to mean: 'each' or 'every' or 'all.'") (citing BLACK's LAW DICTIONARY 119 (3rd ed. 1951)). Generally, "any" means "one, some, or all," an indefinite number, without limitation. *See Doherty v. King*, 183 S.W.2d 1004, 1007 (Tex.Civ. App.-Amarillo 1944, writ dism'd) ("[W]hen the word 'any' is used in a plural sense it means 'all,' 'all or every,' 'each,' 'each one of all,' or 'every' without limitation.") (quotations omitted); WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 97 (1981); *see also Kirby Lake Dev. Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 840 (Tex.2010) (recognizing that "any" has generally been interpreted to mean "every" depending on context); BLACK's LAW DICTIONARY 86 (5th ed. 1979) (term "any" is often synonymous with "either," "every," or "all," although its meaning depends upon context and subject matter). "Each" is "[a] distributive adjective pronoun . . . refer[ring] to every one of the persons or things mentioned; every one of two or more persons or things, composing the whole, separately considered." BLACK's LAW DICTIONARY 455; *see also* WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 713 (defining "each" as "being one of two or more"). "Every" is "each one of all; all the separate individuals who constitute the whole, regarded one by one." BLACK's LAW DICTIONARY 498; *see also* WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 788 (defining "every" as "being each individual . . .").

In the context of paragraph seven, the use of the words "any," "each," and "every" encompass not just "some" or "certain" defenses, but *all* possible defenses that might exist. Paragraph seven is broad, inclusive, and conveys an intent that the guaranty would not be subject to any defense other than payment. That includes section 51.003's right of offset.

However, we do not stop there in our analysis. In order to determine the parties' intent, we must examine the entire writing. *Heritage Res.*, 939 S.W.2d at 121; *Wells Fargo*, 194 S.W.3d at 726. At least four provisions, in addition to paragraph seven, demonstrate this intent. In paragraph one, Moayedi "unconditionally, absolutely and irrevocably" guaranteed payment of Village's debt up to $196,000 together with accrued interest and collection costs. In paragraph two, Moayedi waived, among other things, diligence on I–35's part in the collection of payment from Villages as well as notice of non-performance, acceleration, demands for performance and renewals or extensions of the indebtedness granted to Villages. Further, and importantly, in paragraph three, Moayedi agreed that I–35 could enforce the guaranty without first resorting to or exhausting any security or collateral. Finally, in paragraph five, Moayedi agreed that I–35 could release the security or

collateral and such action would not impair or diminish his obligations under the agreement. Giving the words used their ordinary and generally accepted meanings, and considering the entire writing, we conclude paragraph seven waives *all* defenses, statutory or otherwise, other than full payment of the debt. *See Heritage Res.*, 939 S.W.2d at 121; BLACK'S LAW DICTIONARY 86, 455, 498.

■ Having concluded the waiver language in paragraph seven encompasses the right of offset provided for by section 51.003, we turn to Moayedi's contention that the public policy of Texas prohibits waiver of section 51.003 rights. As discussed above, a strong public policy exists in Texas supporting preservation of the freedom of contract. *See* TEX. CONST. art. I, § 16; *Fairfield*, 246 S.W.3d at 664. However, Moayedi contends we should conclude public policy bans the waiver of section 51.003 offset rights based on the *Segal* case because "the public policy of Texas Property Code § 51.003 is to prevent mortgagers from recovering more than their due at the guarantor's expense...." While the First Court of Appeals in *Segal* did make such a statement, after substantial and detailed analysis, it concluded public policy did not preclude waiver of chapter 51 offset rights. *See Segal*, 155 S.W.3d at 279–80. Rather, the First Court of Appeals in Houston, the Fifth Circuit, and the Austin Court of Appeals have concluded Chapter 51 rights of offset may be contractually waived. *See LaSalle*, 289 F.3d at 840–42; *Segal*, 155 S.W.3d at 279–80; *Kelly*, 2011 WL 6938522, at *9. As noted above, in reaching this conclusion, the Fifth Circuit and the Houston First Court of Appeals carefully chronicled the acts of the legislature in providing that rights in several sections of the property code are non-waivable. In contrast, the Texas Legislature did not

designate section 51.003 rights as being non-waivable. *See LaSalle*, 289 F.3d at 841; *Segal*, 155 S.W.3d at 279. We agree with the reasoning of those courts. Moreover, we cannot agree with Moayedi's contention that the legislature's attempt to prohibit waiver of section 51.003 by proposing a bill that included a provision to that effect is an indication of "what the public policy of the State is on the issue" as to section 51.003. The final bill, as enacted, included no such provision. *See* Act of May 29, 2009, 81st Leg., R.S., ch. 1178, § 1, 2009 Tex. Gen. Law 3741, 3741–44 (final version of H.B. 3502). We decline to "infer" a provision or policy the legislature has failed to adopt. *See Tex. Water Comm'n v. Brushy Creek Mun. Util. Dist.*, 917 S.W.2d 19, 23 (Tex.1996) (deletion of provision in pending bill indicates legislative intent to reject proposal and "courts should decline to infer a limitation in a statute that the Legislature has explicitly rejected").

Given the policy favoring freedom of contract, the history of the legislature respecting its failure to prohibit waiver of section 51.003, and existing case law, we conclude I–35 met its burden of establishing its right to summary judgment as a matter of law. Further, we conclude the waiver language in paragraph seven of the guaranty agreement is enforceable as a matter of law to waive the offset rights identified in section 51.003 of the Texas Property Code. Accordingly, and finally, we conclude the trial court erred in denying I–35's motion for summary judgment and in granting Moayedi's. I–35's sole issue is decided in its favor.

## V. Conclusion

We reverse the trial court's order granting Moayedi's motion for summary judgment and denying I–35's motion for summary judgment. In accordance with the

guaranty agreement, we render judgment that I–35 recover from Moayedi $196,000 plus interest and costs as stated in the guaranty. We remand to the trial court for a determination of interest and costs as provided for in the guaranty agreement.