**Dissenting Opinion issued August 13, 2013**

**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-00912-CV**

**COMPASS BANK, Appellant**
v.
**MANCHESTER PLATINUM MANAGEMENT, INC.,**
**TODD ALLAN DEVEILLENEUVE AND ALLAN R. DEVEILLENEUVE, Appellees**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC10-1478-J**

**DISSENTING OPINION**

Before Justices FitzGerald, Fillmore, and Evans
Dissenting Opinion by Justice FitzGerald

**OVERVIEW**

The pivotal question is whether loan documents actually "waived" the statutory right of borrower and guarantors to request the court to make a fair market value determination of certain property. Absent a waiver, the court's determination of fair market value can be used in calculating the amount of the debt owed after nonjudicial foreclosure.

This case reflects a lender's vanishing act that no informed borrower or guarantor in Texas will fail to appreciate. The lender carefully inserts a few key generic words into printed loan documents and, if debtor defaults, lender claims these words mean "waiver" and *poof*, a Texas law designed to protect borrowers and guarantors is rendered impotent. Through an added dose of misdirection, lender reaps a huge financial windfall (oftentimes hundreds of thousands, if not millions, of dollars) while the borrowers and guarantors are stripped of all investment equity

and saddled with a huge debt. But the lender is not done: lender may resell the property at yet another substantial profit. This summarizes a fairly common situation which is financially profitable for the lender and financially devastating for the borrowers and guarantors.[1]

There are basically two scenarios that play out when mortgages are foreclosed. In the first scenario, upon default of mortgage loan, borrower and guarantor exercise their statutory right to request the court to determine the fair market value of property at the time of the foreclosure sale. The court's determination of this value is deducted from total debt and the resulting balance is owed lender.

In the second scenario, upon default of mortgage loan, when borrower and guarantor attempt to exercise their statutory right to request the court to determine the fair market value of property at time of foreclosure sale, lender claims loan documents waived this right. Thus, at foreclosure sale, an arbitrarily reduced price can be set for the property and this reduced value then deducted from total debt; the borrower and guarantor owe lender the resulting balance. Obviously, the lender's profits are remarkably increased because the lender has the discretion to submit a low bid and thus set an arbitrarily low price at the foreclosure sale, a price that lender does not have to justify and that bears no relation to the fair market value of the property. The wider the margin between debt and nonjudicial foreclosure price, the higher the amount borrower and guarantor owe lender and the greater the lender's profit. Thereafter, lender resells property.

---

[1] This description sheds reliance on confusing terms in an effort to make the foreclosure transaction clear. These transactions normally involve debtors (the borrower and guarantor), creditors (the lender may be a bank or other financial institution), and a trustee who conducts a public auction. Interestingly, oftentimes the lender and the trustee have common interests. For example, in this case, the trustee was the lender's own lawyer. Also interesting is that the lender may be the only bidder, and therefore a low bid is the rule, not the exception. The lender is hardly motivated to bid the fair market value. The record is silent as to any resale of this property by the lender.

In this case, Lender made such a claim of waiver. According to Lender, Borrower and Guarantors executed loan documents in which they waived any offset. This Court sees a waiver of any offset. I see a thinly veiled "setup," one so egregious it should not be tolerated.

It is well-established black letter law that a waiver involves the intentional relinquishment of a known right. Having carefully crafted loan documents calculated to protect its rights, the lender in this case attempts to rely on an alleged waiver of Guarantors' rights that was not mentioned, referenced, or even alluded to in the documents. Neither the express language of the contract nor sound public policy supports such a waiver. And while the majority relies on *Moayedi* and its progeny to approve the strained construction Lender advances, I would conclude that the waiver language in the Guaranty is not sufficient to waive the Guarantors' right to an offset under section 51.003 of the property code, and I would further conclude *Moayedi* was wrongly decided. *Interstate 35/Chisam Road, L.P. v. Moayedi*, 377 S.W.3d 791 (Tex. App.— Dallas 2012, pet. filed). I would affirm the trial court's judgment. I dissent because I believe Borrower and Guarantors made no such waiver, and therefore have been deprived of their statutory right of offset — a harsh penalty indeed. Before this case is finally dispatched, a candid look at what this Court has approved is in order.

**THE LOAN AND THE UNDERLYING LAWSUIT**

On August 7, 2007, the Borrower executed and delivered a promissory note to Lender in which the Borrower promised to pay Lender the principal sum of $873,700.00 with interest as stated in the note (the "Note"). The Note was secured by a Deed of Trust executed by the Borrower and given as collateral for the Note. The Note was also secured by a guaranty (the "Guaranty") executed by each of the Guarantors.

The Note and Deed of Trust were extended three times by documents entitled "Renewal and Extension of Note and Liens," but the Borrower eventually defaulted under the Note.

Immediately prior to foreclosure, the amount outstanding on the Note was about $931,500. The Lender's pre-foreclosure appraisal, prepared by Paul Bailey, dated June 22, 2010, valued the real property securing the Note at $855,000.[2] But two weeks later, the property was sold in a non-judicial foreclosure sale for only $538,550. The Lender applied the sale credit to the outstanding balance and then claimed close to $400,000 remained due and owing.

Lender sued the Borrower and Guarantors on the Note and Guaranty, seeking a deficiency balance close to $400,000, plus costs and attorney's fees. The Borrower and Guarantors filed both a motion requesting determination of fair market value and a counterclaim seeking an offset against the deficiency pursuant to section 51.003 of the Texas Property Code. Lender responded that the right of offset had been waived.

All parties moved for summary judgment on the issue of whether the right to a section 51.003 offset had been waived, and whether the claim for offset had been properly asserted by motion and counterclaim rather than as a defense. In support of their motion for summary judgment, the Borrower and Guarantors submitted the affidavit of appraiser Jim Goodrich. Goodrich opined that the fair market value of the property as of July 6, 2010, the date of the foreclosure, was $855,000. The Lender did not challenge the Goodrich affidavit or his opinion that the fair market value of the property as of the date of foreclosure was $855,000. It appears undisputed that the fair market value was $855,000; Lender provided no justification or explanation for setting the foreclosure price at $538,550. The trial court denied Lender's motion for summary judgment, granted the Borrower's and Guarantors' motion for summary judgment,

---

[2] The Lender's records also contain another earlier appraisal prepared by Jack Simpson. This appraisal reflects that the market value of the property as of February 28, 2010 was $865,000.

and, after applying the offset for fair market value, entered judgment for Lender for about $18,700.00.[3]

## THE STATUTORY RIGHT TO A FAIR MARKET VALUE OFFSET

Appellees' claimed right to a fair market value offset is premised on section 51.003(c) of the property code. *See* TEX. PROP. CODE ANN. § 51.003(c) (West 2007). Under the statute, a guarantor against whom a deficiency judgment is sought may move the court for a determination of the property's fair market value as of the date of the foreclosure sale and, if the fair market value is greater than the foreclosure sale price, the guarantor is entitled to an offset against the deficiency in the amount by which the fair market value exceeds the sale price. *Id*. Specifically, the statute provides:

> **Deficiency Judgment**
>
> (a) If the price at which real property is sold at a foreclosure sale under Section 51.002 is less than the unpaid balance of the indebtedness secured by the real property resulting in a deficiency, any action brought to recover the deficiency must be brought within two years of the foreclosure sale and is governed by this section.
>
> (b) Any person against whom such a recovery is sought by motion may request that the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale. The fair market value shall be determined by the finder of fact after the introduction by the parties of competent evidence of the value. Competent evidence of value may include, but is not limited to, the following: (1) expert opinion testimony; (2) comparable sales; (3) anticipated marketing time and holding costs; (4) cost of sale; and (5) the necessity and amount of any discount to be applied to the future sales price or the cashflow generated by the property to arrive at a current fair market value.
>
> (c) If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the

---

[3] The trial court's judgment awarded Lender $18,700 as of June 17, 2010, with interest to accrue from that date at the rate of 5% per annum until all unpaid amounts are paid in full, against Manchester and Allan and Todd Deveilleneuve, jointly and severally. This amount reflects the trial court's application of a fair market value offset against the deficiency.

amount by which the fair market value, less the amount of any claim, indebtedness, or obligation of any kind that is secured by a lien or encumbrance on the real property that was not extinguished by the foreclosure, exceeds the sale price. If no party requests the determination of fair market value or if such a request is made and no competent evidence of fair market value is introduced, the sale price at the foreclosure sale shall be used to compute the deficiency.

*Id*. § 51.003 (a), (b), (c).

## FUNDAMENTAL PRINCIPLES OF WAIVER AND CONSTRUCTION

We construe a guaranty as any other contract. *Mid–South Telecomms. Co. v. Best*, 184 S.W.3d 386, 390 (Tex. App.—Austin 2006, no pet.). In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). Courts should examine the entire writing "to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id*. Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Id*. "We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction [that] is unreasonable, inequitable, and oppressive.'" *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex.1987)). We must look at all of the contract's parts together and be "particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). We presume that the parties to a contract intend every clause to have some effect. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

To be effective, a waiver of the section 51.003 right of offset must be clear and specific. The United State Supreme Court has defined waiver as an "intentional relinquishment or

abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). The Texas Supreme Court has defined waiver as the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987); *Mass. Bonding & Ins. Co. v. Orkin Exterm. Co.,* 416 S.W.2d 396, 401 (Tex. 1967). The determination of whether there has been an "intelligent waiver" depends on the circumstances of the case. *Orkin Exterm. Co*., 416 S.W.2d at 401. Waiver is a matter of intent as "[t]here can be no waiver unless so intended by one party and so understood by the other." *Lesikar v. Rappeport*, 33 S.W.3d 282, 300 (Tex. App.—Texarkana 2000, pet. denied).

**ISSUE 1: WHETHER GUARANTY CLEARLY, SPECIFICALLY, AND UNEQUIVOCALLY SHOWS WAIVER OF OFFSET.**

Lender relies upon paragraph 3 of the Guaranty to argue the Guarantors waived the right to offset under section 51.003(b) and (c). Initially, I note that Lender does not address Borrower in this first issue; it is restricted entirely to the Guarantors.

The terminology, the text of this paragraph, and this paragraph in the context of the entire Guaranty are important to the resolution of the issue before us. The paragraph provides:

> Guarantor's Obligations Independent: Statute of Limitations.
>
> The obligations of Guarantor hereunder are independent of the obligations of the Borrower, and a separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or whether Borrower be joined in any such action or actions; and Guarantor waives, to the fullest extent permitted by applicable law, the benefit of any statute of limitations or other defenses affecting its liability hereunder or the enforcement thereof.

The paragraph in which the alleged waiver language appears is headed "Guarantor's Obligations Independent: Statute of Limitations." The heading does not even suggest that this paragraph contains a waiver of the statutory right of offset. The paragraph essentially pertains to the independent nature of Guarantor's obligations and joinder of the Borrower in litigation. The

–7–

language at issue (guarantor waives "the benefit of any statute of limitations or other defenses affecting liability . . . .") does not relate to Guarantor's obligations. Further, the language is arbitrarily positioned at the end of the paragraph. Finally, this paragraph does not contain the specific term "setoff" anywhere.

It is therefore not surprising that Lender argues the reference to "other defenses" in paragraph 3 "encompasses" the right of offset under section 51.003. This argument brings to mind the popular idiom "necessity breeds invention." Lender has no other viable choice but to take the position that the generic language ("other defenses") incorporates the specific term(s) ("offset" or section 51.003 right to fair market value determination) at issue. In effect, Lender attempts to sweep the right of Guarantors to a legitimate fair market value determination under section 51.003 into a virtual "waiver default category." Lender reaps a veritable fortune by aggressively pursuing a course of action based on waiver.

A review of several canons of construction is helpful. Under the doctrine of *ejusdem generis*, when general words follow specific examples, the general words are to be restricted in their meaning to a sense analogous to the same kind of class as those expressly mentioned. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003). Likewise, according to the maxim *noscitur a sociis* (a word is known by the company it keeps), when general and specific words are grouped together, the general words are limited by the specific, and will be construed to embrace only objects similar in nature to those things identified by the specific words. *Id*.; *see also U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 606 (Tex. 2008).

Applying these maxims to the paragraph at issue, I note that the specific reference to the "statute of limitations" is followed by a general reference to "any defense affecting liability."

The question then becomes whether the right of offset falls within the category of "any defenses" analogous to the statute of limitations.

As our sister court has observed, "[a] limitations bar differs materially from a debtor's or guarantor's rights to valuation and offset under chapter 51." *Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 281 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd). Limitations is a procedural device. *Id*. A waiver of a limitations bar expands the time the Legislature has allowed for suit. *Id.* On the other hand, "a guarantor's valuation and offset rights under chapter 51 are substantive rights, not procedural bars to suit." *Id.* Therefore, the general phrase "any defenses," as used in the context of this paragraph, should include only those procedural bars similar in nature to a statute of limitations defense. The right of offset is not such a defense.

It is also helpful to examine the waiver language in the context of the entire Guaranty agreement to discern whether or not there is a pattern of clarity and specificity in relevant paragraphs related to waivers and setoffs. Significantly, paragraph 6 in the Guaranty addresses waivers and provides:

> **Waivers.** Guarantor waives any right to require Bank to (a) proceed against Borrower; (b) proceed against or exhaust any security held from Borrower; or (c) pursue any other remedy in Bank's power whatsoever. Guarantor waives any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower for the indebtedness. Until the Indebtedness of Borrower to Bank shall have been paid in full, and is not subject to refund or disgorgement, even though such indebtedness is in excess of Guarantor's liability hereunder, Guarantor shall have no right of subrogation, and waives any right to enforce any remedy which Bank now has or may hereafter have against Borrower, or any other guarantor, and waives the benefit of, and any right to participate in any security now or hereafter held by Bank. Guarantor waives all presentments, demands for performance, notices of non-performance, protests, notices of protests, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation, or incurring of new or additional Indebtedness.

The title "Waivers" and the text of this paragraph clearly show it is intended to identify the rights to be waived by the Guarantor. *See Heritage*, 939 S.W.2d at 121 (discussing use of plain,

ordinary, accepted meaning of terms in construing contracts). Yet, despite the numerous enumerated waivers identified and described, this paragraph does *not* waive the right of setoff, the section 51.003 request, waive the right to assert right of offset as a counterclaim, or reference deficiency judgment. It is telling that the paragraph whose purpose is to identify waivers and should, therefore, delineate the waivers fails to include the waiver at issue. I would, therefore, conclude the guaranty does not encompass this waiver.

"Setoff" is specifically addressed in paragraph 7 in the Guaranty, albeit with reference to the Lender's rights.[4] Paragraph 7 provides, in pertinent part that:

> No lien or right of setoff shall be deemed to have been waived by any act or conduct on the part of the Bank, or by any neglect to exercise such right of setoff, or to enforce such lien or by any delay in so doing, and every right of setoff, and lien shall continue in full force and effect until such right of setoff or lien is specifically waived or released by an instrument in writing executed by the Bank.

(Emphasis added). This language requires an express, not an implied, waiver of offset before any right of offset would be waived. This language favors the specific over the general.

Lender's waiver argument appears to be based primarily on self interest as it is inconsistent with the context of paragraph 6 (Waivers) and paragraph 7 (Setoffs) which show a pronounced preference for clarity and specificity with respect to waivers by Guarantors and waiver of setoff by Lender. The Guaranty as a whole shows clarity and specificity trumps obscurity. But it is undisputed the Guaranty contains no such waiver of setoff by Guarantors.

If we are to examine the meaning of terms, those terms should be part of the agreement. The terms at issue were not contained in the Guaranty. If we are to examine the meaning of terms in context, we should look at relevant portions of the Guaranty to determine if "waiver of

---

[4] Essentially, this paragraph provides that the "bank shall have a lien upon and a right to setoff against all moneys, securities, and all other property of the Guarantor."

setoff" is clearly and specifically identified and placed in a paragraph appropriately headed, or at least included among other rights expressly waived. It is entirely unreasonable and misleading for the alleged waiver language to be embedded in a provision with an unrelated heading, and buried at the end of verbiage about an unrelated topic.

Thus, I conclude that Lender's argument promoting the existence of a "waiver of setoff" in context is unreasonable and misleading. Under such circumstances, the general reference to a waiver cannot reasonably establish an intentional relinquishment of the statutory right of offset. It is well-established that "[o]nce the terms of a guaranty are ascertained, the guarantor is entitled to have his agreement strictly construed and it may not be extended by construction or implication beyond the precise terms of his contract." *Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 631 (Tex. App.—Dallas 1994, no pet.).

In determining whether the Guaranty includes a waiver of the right of offset, we must also be mindful of the purpose of section 51.003. The statute was designed to protect borrowers and guarantors in deficiency suits following non-judicial foreclosure on realty. *See Long v. NCNB-Tex Nat'l Bank*, 882 S.W.2d 861, 865 (Tex. App.—Corpus Christi 1994, no writ). As this Court noted in *Interstate 35/Chisam Road, L.P. v. Moayedi*, 377 S.W.3d 791 (Tex. App.—Dallas 2012, pet. filed), "supporters favored . . . section 51.003 because it 'would ensure that borrowers receive proper credit when their foreclosed property is sold and protect them against large deficiency judgments resulting from unreasonably low prices paid at foreclosure sales.'" *Id.* at 797 (citations omitted). In this case, Lender's approach—indulging in generalities in order to cast the widest possible net, rather than engaging in clear and specific definition of terms—undermines and circumvents the purpose and effect of the statutory provision. I decline to

approve such a construction of the guaranty as it is tantamount to directly dismantling the statutory provision designed to offer substantial protection to borrower and guarantor alike.

**PRIOR DECISIONS OF THIS COURT**

In considering particular guaranties involving a claimed waiver of the right of offset, this Court has previously found waiver language in certain documents sufficient to waive a right of offset. *See, e.g.*, *King v. Park Cities Bank,* No. 05-11-00593-CV, 2012 WL 3144881, at \*3 (Tex. App.—Dallas Aug. 3, 2012, no pet.) (mem. op.); *Smith v. Town N. Bank*, No. 05-11-00520-CV, 2012 WL 5499406, at \*3 (Tex. App.—Dallas Nov. 13, 2012, pet. denied) (mem. op.); *Moayedi*, 377 S.W.3d at 801. The language in those guaranties, however, is distinguishable from the language in the Guaranty in the present case.

For example, in *King*, the Court considered a guaranty that provided guarantors agreed to waive:

> Any and all rights or defenses arising by reason of (A) any . . . 'anti-deficiency' law or any other law which may prevent [the Bank] from bringing any action, including a claim for deficiency, against Guarantor, before or after [the Bank's] commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; . . . or . . . (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness.

The guarantors further

> waive[d] and agree[d] not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by [the maker], the Guarantor, or both.

*King*, 2012 WL 3144881, at \*3. The *King* guarantors contended the right of offset in section 51.003(c) could not be contractually waived and therefore they were entitled to a determination of the fair market value of the properties on the day of foreclosure. This Court, relying on *Moayedi,* concluded the right of offset could be contractually waived. As to guarantors' argument that the documents referred to claim of offset, not right of offset, this Court, again

–12–

relying upon *Moayedi,* concluded the above language was adequate to "waive the Guarantors' right to a determination under section 51.003(b) of the fair market value of the foreclosed property for purposes of obtaining an offset against the deficiency owed under property code section 51.003(c)." *Id.*

The Court considered the same waiver clause in *Smith. See Smith,* 2012 WL 5499406, at *1. Relying on *King* and *Moayedi*, the Court concluded that the "waiver language in the continuing guaranty was sufficient to apprise Smith of the rights he was relinquishing and specifically conveyed the intent that Smith's responsibilities as guarantor would not be subject to any defense other than payment." *Id.* at *3.

The alleged waivers in the Guaranty at issue here, however, are not included in a paragraph describing substantive or similar defenses. Instead, the alleged waiver language is buried in an unrelated paragraph. Unlike *King* and *Smith*, the paragraph in which the alleged waiver language appears in this case does not reference claims for deficiency, foreclosure, or any other action in which a right of offset might apply. There is also no specific reference to set off, recoupment, deficiency, "anti deficiency" law, or foreclosure or any similar reduction to the indebtedness, and there is no reference to counterclaim, counter demand, recoupment or similar rights. The only defense referenced in the waiver language here is the procedural bar of limitations, in the context of joinder of the Borrower in any lawsuits. As previously noted, limitations and joinder are not of similar kind or character to a right of offset or recoupment.

In *Moayedi*, this Court reviewed section 51.003's legislative history and public policy considerations, and concluded that the rights provided by section 51.003 are subject to waiver and that such waivers do not violate public policy. *Moayedi*, 377 S.W.3d at 798–99; *see also LaSalle Bank Nat'l Ass'n v. Sleutel*, 289 F.3d 837, 842 (5th Cir. 2002) (concluding right of offset

under section 51.003 can be waived). The Court rejected Moayedi's argument that because section 51.003 functions as a means of determining the proper amount of the deficiency as opposed to avoiding liability, it was not a defense encompassed by the waiver of "any defenses" in the guaranty. *Id.* Then, the Court considered the following language to determine whether Moayedi had waived his right to an offset under section 51.003:

> Guarantor further agrees that this Guaranty shall not be discharged, impaired or affected by . . . any defense (other than the full payment of the indebtedness hereby guaranteed in accordance with the terms hereof) that the Guarantor may or might have as to Guarantor's respective undertakings, liabilities, and obligations hereunder, each and every such defense being hereby waived by the undersigned Guarantor.

> To the extent permitted by law, Guarantor expressly waives and relinquishes all rights and remedies of surety, including but not limited to, all rights and remedies provided under Chapter 34 of the Business and Commerce Code of the State of Texas.

Considering this language in the context of the paragraph in which it was used, as well as in the context of the entire writing, the Court concluded the language encompassed the right of offset. *Moayedi*, 377 S.W.3d at 801. *But see Salvagio v. Madison Realty Capital, L.P.*, No. H-11-2183, 2012 WL 5397190, at *3 (S.D. Tex. Nov. 5, 2012) (holding waiver of "any offsets" language insufficient to waive statutory right of offset under section 51.003 because language insufficient to include waiver of right accruing in the future). I believe *Moayedi* is distinguishable from this case and was also wrongly decided.

In *Moayedi*, the defendant argued that the waiver language in the guaranty he signed was too broad and vague to be enforceable. Relying on *LaSalle* and *Segal*, the defendant asserted that "the waiver must specifically express either that section 51.003 rights are waived or the right of offset is waived." *Moayedi*, 377 S.W.3d at 799. Instead, in its analysis, the Court acknowledged specific waiver language had been found enforceable "to preclude a 51.003 right of offset," and explained, in great detail, the breadth of the waiver clause at issue. Specifically, the Court stated,

–14–

"[a]lthough *LaSalle* and *Segal* will be helpful in our analysis, they do not address the type of general language we have before us." *Id.* at 799–800. Then the Court explained why the terms "any," "each," and "every" include, in effect, the kitchen sink. *Id.* at 800. But there was no question that the clause at issue was broad; the question presented was whether the clause was sufficiently specific. Thus, the question posed for resolution was clear. The Court, however, ignored the question and completely failed to address the defendant's argument.

I maintain that *Moayedi* was wrongly decided and sets an unworkable and extreme precedent for this Court. Allowing financial institutions to claim, after the fact, that rights that were not specified, referenced, or even vaguely alluded to have been waived by unsuspecting guarantors contradicts the definition of waiver as the "intentional relinquishment of a known right." A waiver of "all" or "any" rights is certainly inclusive by definition, but that does not solve the problem. The issue is whether the terms are so general and over-inclusive as to be meaningless. Addressing the *Moayedi* defendant's argument head on, I would have concluded that the broad, all-inclusive language was in fact so vague and obscure that it defied analysis and frustrated any reasonable attempt to define its parameters. Clearly the language did not identify a section 51.003 right of offset. Like the waiver clause at issue here, the failure to specify either offset or section 51.003 should have been fatal to enforcement. The *Moayedi* court acknowledged that the statute was designed to protect borrowers and guarantors in deficiency suits brought following nonjudicial foreclosure on realty. *Id.* at 797. The Court's conclusion achieved the opposite result.

Although I take issue with the *Moayedi* reasoning and result, I also believe it is distinguishable from the case at bar. In *Moayedi*, for example, the broad waiver language was included in a paragraph with descriptions of like kind and character. *Id.* at 801. Here, the

purported waiver language is in a paragraph describing the independent nature of the obligations of Guarantor and the period of limitations. Thus, the waiver language in this case is even further down the continuum of the vague and obscure than the all-encompassing language in *Moayedi.*

**CONCLUSION: GUARANTY CONTAINS NO CLEAR, SPECIFIC, AND UNEQUIVOCAL WAIVER OF OFFSET OR SECTION 51.003 RIGHTS**

The general language at issue ("or other defenses") appears in a less than conspicuous form, one which gives new meaning to the phrase "fine print." The language at issue does not clearly, specifically, or unequivocally waive the right of offset such that Guarantors can be said to have intelligently waived their right to request the court determine the fair market value of the property at the time of foreclosure. Section 51.003 provides a mandatory procedure that the court must follow once the request is made to determine the property's value. A guaranty should likewise embrace language specifically waiving these steps if that is the intent of the parties.

Significantly, most cases in which courts have concluded the section 51.003 right of offset was waived involved language with more specificity than the language in these agreements. *See, e.g.*, *Segal*, 155 S.W.3d at 278–79 (waiver of all rights, remedies, claims, and defenses based on sections 51.003, 51.004. and 51.005 of the Texas Property Code); *Kelly v. First State Bank Cent. Tex.*, No. 03-10-00460-CV, 2011 WL 6938522, at *8–9 (Tex. App.—Austin Dec. 30, 2011, pet. granted, judgm't vacated w.r.m.) (referencing sections 51.003, 51.004, and 51.005 of the Texas Property Code); *LaSalle*, 289 F.3d at 840 (referencing right of offset). This minimal degree of specificity is absent here. And as previously described, the borrower and guarantor are entitled to even greater specificity before this Court concludes both parties intended that this valuable right be waived.

For example, in *New Millennium Homes, Inc. v. Texas Community Bank, N.A.*, No. 09-12-00073-CV, 2013 WL 645235, at *2 (Tex. App.—Beaumont Feb. 21, 2013, no pet.) (mem. op.), the court considered a Deed of Trust with the following language:

> WAIVER OF DEFICIENCY STATUTE.
>
> In the event an interest in any of the mortgaged property is foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, grantor agrees as follows, notwithstanding the provisions of sections 51.003, 51.004, and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, grantor agrees that beneficiary shall be entitled to seek a deficiency judgment from grantor and any other party obligated on the note equal to the difference between the amount owing on the note and the amount for which the mortgaged property was sold pursuant to judicial or nonjudicial foreclosure sale. Grantor expressly recognizes that this section constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit grantor and other persons against whom recovery of deficiencies is sought or guarantor independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the mortgaged property as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Grantor further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the mortgaged property for purposes of calculating deficiencies owed by grantor, guarantor, and others against whom recovery of a deficiency is sought.

This instrument spelled out the rights being waived in clear, specific, and unequivocal detail and referred to section 51.003. The court concluded the provisions waived the right to a determination of fair market value. *Id*. at *3. I would have this Court measure the language of the Guaranty at issue here against the language in the instrument in *New Millenium*. In the absence of the kind of clear, specific, and unequivocal language found in *New Millenium*, the Court should not conclude that waiver has occurred**.** Lender uses "defenses" in the Guaranty, then claims "waiver." This Court sees "waiver." I see a lender's paradise predicated on generalities with devastating financial consequences for the borrower and guarantor.  The language at issue here is woefully inadequate to waive Guarantors' statutory right to offset.

**THE MECHANISM FOR ASSERTING A RIGHT TO OFFSET UNDER SECTION 51.003**

There is an additional reason the section 51.003 right of offset is not waived by the alleged contractual waiver of "any statute of limitations or other defenses"—the procedural mechanism prescribed by section 51.003 demonstrates that the right of offset is not a "defense" at all. Defenses must be raised by pleading, as prescribed by Rule 94 of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 94. Pleadings are petitions and answers. *See* TEX. R. CIV. P. 45; *Rupert v. McCurdy*, 141 S.W.3d 334, 339 (Tex. App.—Dallas 2004, no pet.). But section 51.003 prescribes that a fair-market-value offset is to be requested by motion. TEX. PROP. CODE ANN. § 51.003(b). Motions are fundamentally different from pleadings. As we said in *Rupert*:

> a motion is an application for an order. . . . Motions may be accepted or rejected by the court, whereas pleadings, if they sufficiently predate the trial, may be submitted and amended freely by the parties without the necessity of court approval. . . . Accordingly, motions are not the functional equivalents of pleadings because insufficient similarities exist between a motion and a pleading to allow them to carry the same legal significance

141 S.W.3d at 339. By providing that this particular offset would be raised by motion, rather than by pleading, the Legislature removed the section 51.003 offset from the category of "defenses." Accordingly, paragraph 3 of the Guaranties and its waiver of "any statute of limitations or other defenses" did not encompass Guarantors' right to a fair-market-value offset under section 51.003.

I would also conclude the section 51.003 right of offset is not encompassed by the waiver language because the right of offset is not a "defense affecting liability." The distinction lies between "limiting liability" and "affecting liability." Offset is a limitation of liability, but it does not affect liability.

As explained by the District Court for the Western District of Pennsylvania,

–18–

The right of setoff (also called offset) allows entities that owe each other money to apply their mutual debts against each other . . . Setoff is not a defense against liability, but a procedural device by which a party may seek to reduce the amount owed to an opponent.

*Conference Archives, Inc. v. Sound Images, Inc*., No. 3:06-76, 2007 WL 870116, at *3 (W.D. Pa. Mar. 20, 2007). *But see Mays v. Bank One, N.A.,* 150 S.W.3d 897, 899 (Tex. App.—Dallas 2004, no pet.) (stating offset is affirmative defense).

Here, the Borrower and Guarantors do not seek to avoid liability on the note (i.e., affect liability). Instead, they requested a section 51.003 offset to reduce the liability based on the fair market value of the property. I believe this distinction is significant, and, because the right of offset is not a defense "affecting liability," I would conclude the right of offset has not been waived.

In addition, the Borrower and Guarantors also asserted the right of offset as a counterclaim. A counterclaim is generally defined as, "a claim, which, if established will defeat or in some way qualify a judgment to which the plaintiff is otherwise entitled." *Doyer v. Pitney Bowes, Inc*. 80 S.W.3d 215, 218 (Tex. App.—Austin 2002, pet. denied). This type of claim does not constitute a "defense affecting liability." Because it is not a defense affecting liability, the right to a section 51.003 asserted by counterclaim was not waived.

**UNCONSCIONABILITY**

I would also reject the purported waiver clause in this case as unconscionable.[5] The surreptitious inclusion of such a clause is the antithesis of ethical commercial practice and results in unreasonable and devastating financial consequences. I recognize that some courts have

_____

[5] Although the parties did not argue the provision was unconscionable, this has such a profound and adverse impact on the public interest that it rises to the level of fundamental error. *See Cox v. Johnson*, 638 S.W.2d 867, 868 (Tex. 1982).

concluded that a waiver of the section 51.003 right of offset is not void as against public policy. *See LaSalle*, 289 F.3d at 840–42. But when the purported waiver is so vague that it is virtually meaningless, it is unconscionable to assign meaning after the fact to achieve the Lender's desired result. If the public policy of this state is such that the right of offset can be waived, the right is sufficiently significant that it should be identified with specificity.

The inherent injustice of the result further illustrates why I deem it unconscionable. If the statute is applied as intended, the Lender does not reap an unreasonable profit at the expense of borrower and guarantor. Instead, the virtually undisputed $855,000 fair market value of the property is applied against the indebtedness, resulting in a deficiency balance that reflects the true value of the transaction. It is impressive indeed that Borrower and Guarantors in this case seek, not to avoid and evade the obligation to pay, but rather to determine the proper amount of the deficiency and to pay same.

But under the scenario promoted by Lender and endorsed by this court, property valued at $855,000 is sold for $538,550—a price arbitrarily determined by the Lender at the nonjudicial foreclosure sale it controls.[6] Then Lender claims it is entitled to recover close to $400,000 as the difference between the amount owed on the Note and the foreclosure sale price. While collecting this amount from the Borrower and the Guarantors, the Lender also owns the property, which it can then sell at fair market value and a substantial profit. Section 51.003 was specifically enacted to protect against this type of windfall. And it is unconscionable to allow the insertion of a few vague terms, buried deep within the transactional documents, to completely eviscerate the

---

[6] The Lender is not even required to justify the foreclosure price. It is well-established that mere inadequacy of price does not constitute grounds for cancellation of a trustee's deed and setting aside the sale. *See Nautical Landings Marina, Inc. v. First Nat'l Bank*, 791 S.W.2d 293, 294 (Tex. App.—Corpus Christi 1990, writ denied).

statutory provision enacted to protect borrowers and guarantors from this type of predatory practice.

**ISSUE 2 IN APPELLANT'S BRIEF READS: "APPELLEES DID NOT MOVE FOR OR ARGUE THAT SECTION 51.003 ENTITLED MANCHESTER TO A FAIR MARKET VALUE OFFSET, AND IT WAS THEREFORE ERROR TO GRANT A SUMMARY JUDGMENT FOR MANCHESTER ON THAT ISSUE"**

Lender asserts that the summary judgment in favor of the Borrower was erroneous because the Borrower did not seek summary judgment in the trial court based on an offset under section 51.003. I would reject Lender's second issue for two reasons. First, the issue is not supported by argument, by citations to the record, or by citations to authorities. Accordingly, the issue is waived. *See* TEX. R. APP. P. 38.1; *see also Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.). Second, the issue is without merit because the Borrower, in its motion for summary judgment in the trial court, expressly raised section 51.003. Thus, I would overrule Lender's second issue on appeal.

**CONCLUSION**

For the foregoing reasons, I would conclude the trial court did not err in granting summary judgment in favor of Borrower and Guarantors. Therefore, I respectfully dissent.

110912DF.P05

KERRY P. FITZGERALD
JUSTICE